The suspense is killing us. We're ready. Good morning, your honors. May it please the court. My name is Doug Sprague and I represent the appellant Leonard Francis in this matter. I would like to reserve three minutes for rebuttal. The district court committed procedural, substantive, and constitutional error when it sentenced Mr. Francis. And that resulted in a substantively unreasonable sentence of 40 months more than even the government had recommended, almost 30 percent more than even the government had recommended. In explaining its sentence as a procedural matter, the district court failed to mention critical arguments Mr. Francis had raised in briefing and at sentencing. And as a substantive matter, the district court did not explain how, or in some cases whether, it had considered or weighed key sentencing factors. And then in the district court... Let me ask you this, counsel. I take your point to be that the district court was required to explicitly address each argument you raised in connection with the sentence reductions. What's your best case for that proposition? I know people make that argument, but I've never seen any case to back it up. What's your best case? And Judge Smith, I don't have a case for that because, and that is not my argument, Judge Smith. Ben, what is your argument? We do not believe the district court has to explicitly mention or deal with, in its oral pronouncement of sentence, every factor that we raised at sentencing. However, we do believe that the court has to address, should at least mention and explain from a procedural standpoint, the key arguments we made. The two key arguments we made were unwarranted sentencing disparity and his cooperation credit being not substantive. But that's just picking, that's cherry-picking out of a whole bunch of things. You're just saying, we wish you'd said more about a lot of things. We're going to narrow these two things. And my question to you is, to what degree is the district court required to wade into those particular matters as opposed to others? What's your best case for that? Your Honor, the best case, the case I would refer you to, Judge Smith, would be the Trujillo case that we cited in our briefs where this court held that the district court did not adequately explain sentencing factors that had been relied upon by Mr. Trujillo at sentencing by way of a, I think it was in that case, a 39-page submission. It had addenda with letters from family and so forth. If I have that right, the Trujillo case is the case I would refer the court to in response to that question. No, please, Judge Smith, go ahead. No, I was going to say that you picked out a particular point there, but there's a lot that was being discussed. And I guess what I'm troubled about is the four district judges, they do their very best to try to deal with all that's brought to them, but sometimes it involves literally scores of pages of commentary. And in this case, you're talking about the family and other issues, his health and so on, all important issues. But how much is involved? How much do you have to say? This is not a monosyllabic judge that said nothing about it. How much does the judge have to say? Your Honor, what this court's cases have held is that when a non-frivolous argument is made that's tethered to a 3553A factor, the court should include at least some commentary on that argument. But forgive me, counsel, 3553A, we have scores of cases that indicate that district judges are not required to just punch down the six factors and talk about them. What case are you talking about that backs up your point? Your Honor, the Trujillo case would be one of those. And I completely agree with you, Judge Smith, that there are many cases that say the district court absolutely does not have to rotely go through each of the 3553. But why in this case and not the other? In this case, Judge Smith, the need to avoid unwanted sentencing disparities was a major argument raised below. As even the district court said at the time of sentencing, she had seen 30-plus defendants in this case, and she had sentenced them. And as she said in some of their sentencing, these other defendants and we mentioned this in our sentencing papers, she said that some of their conduct was even, quote, unquote, more aggravated. But did any of them cut off their ankle monitor and abscond to Venezuela? No, Your Honor, not that I know of. I don't think so. And the other thing about this case that strikes me as, it doesn't leave me a lot of doubt about the district court's familiarity with it is this very protracted period of time. Many, many defendants, the scheme and the response, the government's response to it went on for how many years? Over 10. Your Honor, Mr. Francis was arrested in September of 2013 and his sentencing was in November of 2024. And appeared several times before the court. There was a bail hearing. He was released on his own recognizance with the ankle monitor. She had hearings about that. She's very familiar with this case. And she's acknowledged the very, very serious consequences and acknowledged that he was in a class by himself, I think, because of absconding. And then I think he wanted credit for the fact that then the year spent in Venezuela was very difficult time. I think she's aware of all of that. The district court was aware of that, of those factors. Absolutely. And as the government points out, we had submitted a roughly 50-page sentencing memorandum, and the court said I've read it. But... Well, she had, and I think your advocacy was admirable. I don't think you left any stone unturned here. It's just that I'm trying to look at, sometimes when we look at a 355A argument of the types that you're making, we can see that there's an important consideration that really wasn't considered. So by the court, it really wasn't factored in. And I'm trying to figure out where is it, what is it you think that I, I think, you think that I should decide she didn't consider. Yes, Your Honor. And you keep saying sentencing disparities. And that is one of the... She tried those cases. She sentenced those other defendants. She's very well aware, right, of what punishments they received. But from, yes, Your Honor. Uh-huh. But from a, both a procedural and substantive standpoint. One from the procedural standpoint. She did not, the district court did not mention that at sentencing. At one point, she said... That being disparity? That being, yes, the need to avoid unwarranted sentencing disparities. All right. At one point, she said, well, Mr. Francis, you were a leader, you were an organizer. That is, of course, the direct words right out of the role adjustment in the sentencing guidelines that had already resulted in a plus four for Mr. Francis. But the district court did not address the need to avoid unwarranted sentencing disparities at sentencing. She mentioned it in the rote factor saying, here's what I need to consider, and she lit, she read parts of 3553A. Uh-huh. But then there was no discussion. From a substantive standpoint, Your Honor, the, the other case, Mr. Francis received a sentence of 180 months. The next defendant down, who was a special agent with NCIS, received a sentence of 115 months. So, Mr. Francis got 65 months, five and a half years more than the next level down. Next was 78, and then we get down to several people who are less than five years or misdemeanors or had their cases dismissed. So, and she did not address this issue from a substantive or procedural standpoint. The other one that I would refer you to, Your Honor, is the exceptionally low risk of recidivism for a defendant who is, was, at the time of sentencing, 60 years old now, 61. Multiple, severe, undisputed health conditions. We had a, a doctor who had written a letter, I think it was in 2022, that said his chances of survival for five years, statistically speaking, someone with his conditions, are 13%. The district- Now, hold on, let me, let me, there, you've got lots to say, but I got a lot on your brief. One of the things that I want to know about is, what relevant, what, does how Francis escaped, have on his, in quotes, failure to appear charge? In other words, how can there be a Fifth Amendment violation if nothing drawn from his silence could bear on the elements of the failure to appear charge? Yes, Your Honor, I think how that can be a Fifth Amendment violation is, are, we submit that if you look at what the district court judge said in this regard, in the context in which she said it, it seems clear that the district court drew an adverse inference from Mr. Francis not having answered the questions, to use the district court's terms, or not having explained how it occurred. I agree with you on the elements, which, which actually, I think, Your Honor, makes it worse, because it is wholly irrelevant to the elements about how the, how he, whether he got in an Uber and went to the border and walked across the border, and then got on a plane, or whether there was something else involved, it's not relevant. But you would agree that there's, there's no Fifth Amendment violation involved here, right? No, Your Honor, I would not agree with that because I think there is. If you look- And why? Why? Here's, here's why, Your Honor, especially in the context. What the district court says, right after mentioning a couple of factors that bear on the, positively on the equities of the matter, the district court says, I must consider your flight from this jurisdiction prior to your first sentencing date. This represents a significant breach of the court's trust and must be taken into account. There must be consequences for this action. Neither you nor the government have explained how this escape occurred. While the sentencing may be the last of many in this group of cases, numerous questions remain unanswered. The, and then in the very next sentence, the district court imposed this sentence of 180 months. Forgive me, counsel, I'm missing your point about the Fifth Amendment. Tell me about that, please. It's from the two sentences here, Your Honor, that neither you nor the government have explained how this escape occurred. I think that is a direct commentary on Mr. Francis's right to remain silent, which of course continues through sentencing. And the next sentence- That, that, that's a stretch. You've got any case law that backs that up? Well, yes, Your Honor. I mean, we've the, going back to the Mitchell case that talks about not drawing adverse inferences from a defendant's sentencing. Well, your problem with Mitchell is that the comment that the court made was much more direct and much more clear that there was a negative inference against whom it was being drawn. I think part of Judge Smith's questions and certainly questions that I have here is, how do we construe this one comment by the district court that references both the defense and the government? Like, how do we know, one, if there is a negative inference being drawn, and if there is, who it's going against? And, Judge Forrest, in this context with the comments, these are, the whole paragraph is negative toward Mr. Francis. Yes, the district court inserts or neither you nor the government, but she is, that whole paragraph, there's three or four sentences where she's holding things against Mr. Francis or speaking negatively. It would be inappropriate, right, because it's perfectly appropriate for her to consider flight as part of calculating the sentence. So negative in the sense that he's going to have a punishment that's connected to this conduct that he himself admitted was unlawful and wrong. But then we submit, Your Honor, she went too far, which is that you haven't answered questions about this. You haven't explained how this occurred. And that, I think, is wholly inappropriate. In my research on this question, I was trying to figure out who has the burden to prove that a Fifth Amendment violation occurred. Is that your burden? Yes, Your Honor. And is, what's the level of proof? Is it a preponderance? It's, I don't know the level on that, Your Honor, whether it's a preponderance. Okay. So then coming back to a question that Judge Smith asked, which is basically, do you have, there's no doubt that there's a comment on the fact that the defendant didn't make a statement or didn't give details about this issue. There's no doubt that there's a comment. The question is, does our case law say that any sort of comment on a defendant's silence is enough to trigger a Fifth Amendment violation, or does there have to be more? Because here, there's a comment, and I'm struggling with, has there been a showing of more? And I, Judge Forrest, I do not believe that a comment, I think the context always has to matter. And in this context, the district court is, has two or three sentences about how the escape is, she's holding it against him, which is fair in the sense that it already has a two-level enhancement in the sentencing guidelines for the obstruction. It's also a breach of trust. It's, it's extraordinary. It, it is, was a breach of trust, and that is why he got a two-level enhancement for obstruction. And he wanted more. He wanted credit for the hard time he had to do in Venezuela. We wanted some consideration of that, not one for one. We also wanted some consideration of the medical furlough time, not one for one. Those were not commented on, Your Honor. All right. I interrupted you, and you were answering Judge Forrest's question. I didn't. I, the, it's the, the context about the comment on silence here is clearly in an adverse nature in the, in the paragraph that the, that's reflected in the transcript here of the judge's comments. So you're just about out of time. Did you want to make any other comments? No. Thank you, Your Honor. Okay. We, we took up a lot of your time. When you come back, we'll put a minute on the clock. Thank you, Your Honor. May it please the Court. Daniel Zip on behalf of the United States. Your Honor, the District Court did not violate Mr. Francis's Fifth Amendment rights in this case. In Mitchell, when the Supreme Court recognized a problem, the District Court in that case explicitly commented on the defendant's failure to testify. The court said it was holding it against the defendant that she did not come forward today and dispute the evidence presented by the United States. That's a very different case. Correct. What about, I think, the biggest, most prominent argument here is the failure to specifically mention sentencing disparities. Sure. Or the need to avoid the same. What do you, what's your response to that? Several responses. First, as Judge Smith noted, there's multiple cases in this Court's case law that explicitly state that the Court does not have to address every argument raised by the defense. The most direct one is Rangel, where the Court says it's often unnecessary to directly address each and every one of defendants' arguments, as long as the record makes clear that the Court has considered the parties' submissions, heard their arguments, and has a reasoned basis for exercising its sentencing discretion. So, the first answer is the Court didn't have to address it at all. The second answer is the Court did at least indirectly address the question by commenting on the fact that she had personally sentenced 30 defendants over the course of the last decade in this case, and then stating that the defendant was the organizer and the mastermind of all of this, sort of implicitly holding that he was differently situated than all those Navy defendants that she had previously sentenced. Am I correct in understanding, I don't know if I am, in correcting my understanding that she handled all of the related cases? That's correct. So, again, the Court was not required to address that specific argument, and defense counsel argued that the district court has an obligation to sort of address the defense's key arguments, but it's not clear from the argument or from the submissions what their key arguments are. As Judge Smith noted, they threw a lot of arguments in here under 3553, everything from how the BOP would treat his credits, to the effect on his family, to his health, to his extraordinary cooperation. There was a lot of arguments presented to the Court, and what the Court did was explicitly list the 3553 factors at the outset, pick the equities and the positives that she found the most compelling and outline those, contrast those with the negative aspects of the case, including his flight, and ultimately arrive at a sentence that was below the guidelines. This Court has never held that that level of explanation is insufficient, and it's certainly not plainly insufficient, because, again, the defense counsel did not object to the adequacy of the Court's explanation. Are you aware if any of the other related defendants got the same enhancements for leadership as Mr. Francis? I don't believe they did, Your Honor, but I don't know all the details of all the cases. Judge Smith, were you trying to ask a question? No. Oh, I misunderstood. I thought you were leaning forward. I guess just to return briefly to the Fifth Amendment argument, even if this Court were to assume that what the district court meant when it said neither party has presented evidence was a direct comment on the defendant's right to exercise his right to silence, then under Mitchell, that still wouldn't be a Fifth Amendment violation, because the Supreme Court in that case and subsequent cases has held that that was a very narrow holding, and it's only when the Court uses a defendant's silence to find the facts of the offense that it violates the Fifth Amendment, and multiple circuits have distinguished that. I'm not sure I agree with that. I mean, I think the Supreme Court is saying that the Fifth Amendment, of course, applies in sentencing because a person should have the right to not incriminate themselves any time either conviction or punishment is on the table for them, and our cases pick up that theme. So at sentencing, punishment is still on the table. Like, maybe the formal elements of whether the crime has been committed have been resolved, but still at sentencing, the Court is considering the facts and circumstances and the whole totality under 3553A to figure out which punishment to give. And so the facts and circumstances surrounding the formal conduct that led to a crime are still factoring into the punishment that's going to give. So why wouldn't the Fifth Amendment be triggered there? Your Honor, my point is just that the Supreme Court in that decision explicitly limited itself. I think the four justice dissent sort of called the majority out for this, and that it limited itself to specific facts of the offense when the Court is using silence to find the facts of the offense, and then said that we're not addressing today whether other aspects of sentencing, whether it's acceptance of responsibility or a lack of remorse, whether the Court can consider a defendant's silence in that context. Here, as defense counsel admitted, the questions about the escape had nothing to do with any of the charges to which he pled guilty. He pled guilty to failure to appear and to the fraud and bribery allegations, but this was simply not a comment on silence going to the facts of this offense. This was, if it was a comment on silence, it was going to a 3553 factor as to how the Court balanced the overall severity of the sentence. So your view is, so your... To get back to the point I made earlier, that the silence here dealt with none of the elements with which he was charged. Correct, and that's what Mitchell held. That's the error that the Court recognized in Mitchell. Other courts, including, I think the most directly on point is Ron Kelo in the Fifth Circuit, where they addressed a very similar argument and said that when you're talking about commenting on silence as to a defendant's cooperation, separate from the elements of the offense, that does not implicate the same concerns as Mitchell. And the Sixth Circuit held the same with respect to the 3553 factors in Kennedy. Judge Smith, do you have any other questions? No. It doesn't appear that the ban has it. All right, thank you. We'd ask that you affirm.  Very briefly, Your Honors, we disagree on the Fifth Amendment argument from the government. Mitchell and this Court's opinion in Mises de Jesus do not say that the district court commenting on the defendant's silence needs to be tailored to the elements of the offense. In fact, Mises de Jesus, I believe, was a drug weight case, and the drug weight is not elements of the offense. The Ron Kelo case, I think, is wholly distinguishable. It was also from the Western District of Texas, and it's not even clear the defendant had counsel below. So I don't think that's persuasive authority at all for this Court's de novo review of this issue. And briefly, I know I've got very limited time, but I do want to focus in a few seconds on Mr. Francis's extraordinary cooperation, that at the end of the day, despite the criminal chief for the U.S. Attorney's Office, who had been doing prosecution for 25 years, said it was unprecedented, it cannot be overstated, Mr. Francis ended up getting one to two levels below the guideline range when all of that was considered. We think that's another factor that supports the finding that the sentence was substantively unreasonable. I see I'm out of time. Judge Smith, do you have additional questions for counsel? No, I don't. Judge Forrest? I don't think we have additional questions. Thank you. Thank you both for your advocacy. We'll take that case under advisement.
judges: SMITH, CHRISTEN, FORREST